UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VALERIE E. MILES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   NO. 3:08CV307 (MRK) |
| | : |
| CITY OF HARTFORD, | : |
| CHERYL GOGINS, ROBERT RUSSELL, | : |
| JOSEPH DAVIS, JAMES BERNIER, | : |
| | : |
| Defendants. | : |

**RULING AND ORDER**

On May 27, 2005, Plaintiff Valerie Miles, an employee of the Connecticut Department of Children and Families (DCF), was called to a residence in Hartford to remove four children from an apartment. As described in more detail below, this incident eventually led to the arrest of Ms. Miles on charges of fabricating evidence and tampering with a witness. The present lawsuit stems from that arrest. Specifically, Ms. Miles brings eight claims against Hartford Police Officers James Bernier, Cheryl Gogins, Robert Russell, and Joseph Davis, as well as the City of Hartford itself: abuse of process under 42 U.S.C. § 1983 (Count One) and Connecticut common law (Count Two), false arrest under § 1983 (Count Three) and Connecticut common law (Count Four), malicious prosecution under § 1983 (Count Five) and Connecticut common law (Count Six), false light under Connecticut common law (Count Seven), and intentional infliction of emotional distress under Connecticut common law (Count Eight). *See* Am. Compl. [doc. # 25].

Defendants moved for summary judgment on all of Ms. Miles' claims. *See* Defs.' Mot. for Summ. J. [doc. # 81]. The Court held an oral argument on this motion on December 14, 2009,

during which Ms. Miles withdrew her claims against the City of Hartford as to Counts One through Six, as well as all claims against Lieutenant Bernier in his supervisory capacity and against all other individual Defendants in their official capacities. Therefore, the only remaining claims are against all individual Defendants in their personal capacities (all counts), and against the City of Hartford (Counts Seven and Eight). For the reasons that follow, Defendants' Motion for Summary Judgment [doc. # 81] is GRANTED in part and DENIED in part. Specifically, the Court grants summary judgment to the City of Hartford on all remaining claims. The Court also grants summary judgment to the individual Defendants on all claims except intentional infliction of emotional distress; the Court denies summary judgment to the individual Defendants on that claim (Count Eight) only.

## I.

The Court assumes the parties' familiarity with the facts of this case, and thus recites them here only briefly. As will become clear, many of the factual details are in dispute. On May 27, 2005, Ms. Miles was instructed by DCF to remove four children from a residence in Hartford. Three of the Defendants, Officers Gogins, Russell, and Davis, were also on the scene and took the children's mother and uncle into custody.[1] Other relatives of the children were also present, including an aunt.

On May 30, 2005, Ms. Miles completed an affidavit to be used by DCF attorneys in Juvenile Court, in which she stated that she had observed Officers Gogins, Russell, and Davis search the mother and uncle before taking them into custody, and that during this search the Officers found three small plastic bags, one of which contained a small quantity of a white substance. A day or two

---

[1] It is undisputed that another Hartford Police Officer, Detective Victor Otero, was also at the scene, but he is not a party to this case. At some point, another non-party Officer, Detective Carlos Ocasio, arrived at the scene to take photographs, but there is some dispute as to whether his presence coincided with that of Ms. Miles.

later, Detective Gogins called Ms. Miles and explained that the reports of the Officers on the scene made no mention of any plastic bags, and that there were no plastic bags in evidence. According to Ms. Miles, Detective Gogins asked her to change her affidavit so as to avoid an Internal Affairs investigation. Ms. Miles refused, but offered to amend her affidavit to reflect that fact that she had not actually witnessed the bags being taken into evidence. A short time later, Ms. Miles did in fact make such a modification to her affidavit. Defendants' account of this discussion is somewhat different. They claim that Detective Gogins made the call because Ms. Miles had sent her a copy of the affidavit along with a note asking Detective Gogins to call her because she had information about drug use in the residence.[2]

In early June 2005, Lieutenant Bernier learned of the discrepancy and initiated an investigation. He interviewed the Officers who were on scene and the children's mother and uncle, all of whom denied that three plastic bags were found as reported by Ms. Miles.[3] Ms. Miles alleges that during this time, pressure was exerted on her by her supervisors at DCF to change her statement. As a result, she contacted the aunt who had been present in the apartment. Ms. Miles claims that the aunt agreed with her account, and that she agreed to put it in writing. In late June, Ms. Miles went to the aunt's residence and obtained the written statement, a copy of which was sent to Lieutenant Bernier. Ms. Miles declined Lieutenant Bernier's request to come to police headquarters to be interviewed. Lieutenant Bernier then interviewed the aunt, who told him that Ms. Miles pressured

---

[2] Ms. Miles claims that it was the *amended* affidavit that was sent to Detective Gogins with a note *after* the phone call. In other words, Ms. Miles claims that Detective Gogins made the call on her own initiative.

[3] Officer Davis did recall that one small plastic bag was found on the uncle and placed on the kitchen table of the apartment, and that the uncle indicated that it was a button bag that came with his shirt. The uncle corroborated this account.

her into writing the letter and mentioning the presence of drugs in the apartment, but that in fact she was not aware that any drugs were found. Ms. Miles denies this account. She also alleges that the mother, uncle, and aunt were all pressured by Lieutenant Bernier to verify Defendants' account of what happened in the apartment.

On July 27, 2005, a Connecticut judge found probable cause for Ms. Miles' arrest and issued a warrant. The arrest warrant was based on an affidavit by Lieutenant Bernier, which was reviewed by a State's Attorney. The next day, Ms. Miles was arrested on charges of fabricating evidence and tampering with a witness. In November 2005, she was terminated from her employment at DCF. On January 13, 2006, the criminal charges against Ms. Miles were resolved by way of Accelerated Rehabilitation (AR). She was put on probation for one year and required to complete 50 hours of community service. Finally, Plaintiff was re-hired by DCF in May 2006 and she received partial back-pay.

## II.

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id*. In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.

Underlying all of Ms. Miles' claims is the implication that the three Officers on the scene on May 27, 2005 lied about the existence of three plastic bags found during their search, and that Lieutenant Bernier helped them to cover it up by manipulating the evidence in the arrest warrant affidavit. While one may wonder at the Officers' possible motivation to lie when they supposedly discovered drugs on the mother and uncle, and then to engage in such an elaborate cover-up, given the disputed facts throughout this case, the question of whether Ms. Miles' allegations are true turns largely on the credibility of the parties and the witnesses, which is ordinarily the province of the jury. However, for the reasons discussed below, even accepting Ms. Miles' version of the facts, Defendants are still entitled to summary judgment on the abuse of process, false arrest, malicious prosecution, and false light claims.

**IV.**

The Court begins with Ms. Miles' abuse of process claims under state and federal law. Federal courts must look to state law for the elements of an abuse of process claim. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Therefore, the analysis of both claims is identical and they must survive or fall together. Defendants argue that Ms. Miles' abuse of process claims actually sound in malicious prosecution, and that she has not presented any evidence to support an abuse of process claim. *See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. [doc. # 81-2] ("Defs.' Mem.") at 3-8. The Court agrees.

> An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of "a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . ." Comment b to § 682 explains that the addition of "primarily" is meant to exclude liability "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."

*Mozzochi v. Beck*, 204 Conn. 490, 494 (1987) (internal quotation marks and citations omitted); *see also Larobina v. McDonald*, 274 Conn. 394, 403-04 (2005).

"The torts of malicious prosecution and abuse of process are closely allied. While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued." *Cook*, 41 F.3d at 80 (internal quotation marks, citation, and alteration omitted).

> Thus, under Connecticut law, a party does not abuse the legal process merely by filing suit. This is true regardless of the plaintiff's motive. . . . Rather, liability for abuse of process lies only when the offending party overtly misuses the process once the proceeding has begun. . . . In short, no matter what misconduct by the tortfeasor

6

> occurs before the commencement of suit, it is not, in itself, an abuse of process because there is not yet process to abuse.

*Doctor's Assoc., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996) (citations omitted); *see also Shaeffer v. O.K. Tool Co.*, 110 Conn. 528, 532-33 (1930) ("The distinction between malicious prosecution or vexatious suit and abuse of process, as tort actions, is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process, but in its abuse."). Therefore, to support a claim for abuse of process, a plaintiff must allege "particular act[s] of misconduct *during the proceedings themselves*." *Doctor's Assoc.*, 92 F.3d at 116 (emphasis added).

Ms. Miles' allegations in this case all involve the *initiation* of process against her – specifically the actions of the Defendants in obtaining a warrant for her arrest. She makes no allegations regarding Defendants' abuse of the judicial process once such process was initiated. In fact, there is no evidence that any of the Defendants participated in the proceedings against Ms. Miles. Even if Ms. Miles were able to establish that Defendants lied in order to have her arrested and cover-up their own misdeeds, this would not be sufficient to support an abuse of process claim. *See id*. at 114. Therefore, the Court grants summary judgment for Defendants on Counts One and Two.

## V.

The Court turns next to Ms. Miles' false arrest and malicious prosecution claims. These claims are best addressed together because they turn on the same questions – specifically (1) whether the criminal proceedings against Ms. Miles terminated in her favor, and (2) whether there was probable cause for Ms. Miles' arrest, or at least arguable probable cause justifying qualified

immunity. Again, the analysis is identical for Ms. Miles' federal and state claims. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law.") (internal quotation marks omitted).

The Supreme Court of Connecticut has explained the elements of a malicious prosecution claim as follows:

> An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) *the criminal proceedings have terminated in favor of the plaintiff*; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

*McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982) (emphasis added); *see also Lopes v. Farmer*, 286 Conn. 384, 389-90 (2008). Thus, there is no question that favorable termination is an element of a malicious prosecution claim. What is less clear is whether favorable termination is an element of a false arrest claim in Connecticut. Defendants claim that it is, *see* Defs.' Mem. [doc. # 81-2] at 10, and not surprisingly, Ms. Miles disagrees, *see* Pl.'s Mem. in Opp. to Mot. for Summ. J. [doc. # 92] ("Pl.'s Resp.") at 37.

As even Ms. Miles' attorney acknowledges, in *Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992), the Second Circuit, speaking through Judge Jon Newman, held that favorable termination of the underlying criminal proceeding is an element of a false arrest claim in Connecticut. *See id.* at 853-54 ("Having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the [plaintiff], thereby precluding the [plaintiff] from pressing his malicious

prosecution claim in this section 1983 action, it would be anomalous to allow the [plaintiff] to challenge here the existence of probable cause for his arrest and incarceration for that *same* criminal charge.") (quoting *Konon v. Fornal*, 612 F. Supp. 68, 71 (D. Conn. 1985)).  Ms. Miles correctly points out that *Roesch*'s holding on this point has been called into question.  For example, in *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996), the Second Circuit stated that "while it is clear under New York law . . . that favorable termination of litigation is not an element of a claim for false arrest, Connecticut law is less clearly settled."  *Id*. at 853; *see also Russo v. City of Bridgeport*, 479 F.3d 196, 204 n.9 (discussing the tension between *Roesch* and *Weyant*); *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 386-87 (D. Conn. 2009) (Squatrito, J.) (acknowledging the tension between *Roesch* and *Weyant* and not deciding the issue); *Holman v. Cascio*, 390 F. Supp. 2d 120, 125-26 (D. Conn. 2005) (Droney, J.) (same); *Colon v. Ludemann*, 283 F. Supp. 2d 747, 753-54 (D. Conn. 2003) (Hall, J.) (same); *but see Wall v. Cetran*, 100 F.3d 943, 1996 WL 47974, at *2 (2d Cir. Feb. 5, 1996) (unpublished opinion) ("Wall's Fourth Amendment claim essentially alleges false arrest and malicious prosecution.  A necessary element of both claims is a disposition of the underlying criminal prosecution in Wall's favor.").  Furthermore, Ms. Miles cites a Connecticut Appellate Court case, decided before *Roesch*, that lists favorable termination as an element of a malicious prosecution claim, but not as an element of a false arrest claim.  *See* Pl. Resp. [doc. # 92] at 43; *Lo Sacco v. Young*, 20 Conn. App. 6, 19-20 (1989).  However, neither the Appellate Court nor the Connecticut Supreme Court has directly addressed this particular question.

*Roesch* is quite clear on this point, and this Court has stated in the past, and continues to believe, that despite the uncertainty surrounding the holding in *Roesch*, it remains good law that this Court must follow absent a ruling to the contrary from the Second Circuit or a Connecticut appellate

9

court. *See Frey v. Maloney*, 476 F. Supp. 2d 141, 147 & n.3 (D. Conn. 2007); *Rodriguez v. Patterson*, No. 3:04CV25 (MRK), 2006 WL 1272620, at *1 & n.1 (D. Conn. Apr. 5, 2006). Several other judges in this district seem to have reached the same conclusion. *See Lupinacci v. Pizighelli*, 588 F. Supp. 2d 242, 249 (D. Conn. 2008) (Hall, J.) (applying a favorable termination analysis to a false arrest claim); *Ortiz v. Town of Stratford*, No. 3:07CV1144 (AHN), 2008 WL 4630527, at *7 n.5 (D. Conn. Oct. 14, 2008) ("Another important prerequisite to bringing a false arrest or malicious prosecution claim is whether the criminal charges were terminated in the plaintiff's favor."); *Davis v. United States*, No. 3:05CV1537 (PCD), 2006 WL 2223934, at *2-*3 (D. Conn. July 31, 2006) (explicitly adhering to *Roesch*); *but see Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318-19 (D. Conn. 2009) (Bryant, J.) (applying a favorable termination analysis to a malicious prosecution claim but not a false arrest claim). During oral argument, the Court gave the parties the option of certifying two questions to the Connecticut Supreme Court: (1) whether favorable termination is an element of a false arrest claim, and (2) whether and under what conditions an AR would qualify as a favorable termination. The parties preferred that the Court proceed with its ruling. The Court hopes that, in time, the Connecticut courts will bring clarity to this important issue. However, absent a precedential opinion to the contrary by the Second Circuit or a Connecticut appellate court, *Roesch* dictates the outcome in this case – favorable termination is an element of a false arrest claim.

       The question then becomes whether resolution of the criminal proceedings against Ms. Miles based on her participation in Connecticut's AR Program satisfies the favorable termination requirement. Again, *Roesch* would seem to control. There, the Second Circuit explicitly held "that a dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit." 980 F.2d at 853; *see also*

*Davis*, 2006 WL 2223934, at *2-*3 (concluding, based on *Roesch*, that AR is not a favorable termination).

This Court has previously concluded that a plaintiff "may satisfy the favorable termination element by showing that the charges . . . were discharged without a trial under circumstances amounting to the abandonment of the prosecution without request by him or arrangement with him." *Frey*, 476 F. Supp. 2d at 148 (internal quotation marks, citation, and emphasis omitted). Thus, "[a] *nolle prosequi* . . . can constitute a favorable termination, so long as the plaintiff demonstrates that it was entered under circumstances indicating that the State has abandoned the prosecution without request by the plaintiff or arrangement with him." *Id.*; *see also Holman*, 390 F. Supp. 2d at 123-24 ("[A] nolle will preclude a subsequent case for malicious prosecution when it was made as part of a plea bargain or under other circumstances that indicate that the defendant received the nolle in exchange for providing something of benefit to the state or victim.").

But even applying this type of case-specific analysis, Ms. Miles' AR was not a favorable termination. The AR statute reads as follows:

> The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime . . . , (3) who has not been adjudged a youthful offender within the preceding five years . . . , and (4) who states under oath . . . that the defendant has never had such program invoked in the defendant's behalf . . . .

Conn. Gen. Stat. § 54-56e(b). The Connecticut Supreme Court "has described one who chooses accelerated rehabilitation as 'a person who may be guilty of the offense charged but whom the legislature has declared a worthy candidate for a second chance.'" *AFSCME, Council 4, Local 1565 v. Dep't of Correction*, 107 Conn. App. 321, 331 (2008) (quoting *State v. Parker*, 194 Conn. 650,

11

658 (1984)). In this case, Ms. Miles applied to the state court for AR and it was granted over the objection of the State. *See* Pl. Resp. [doc. # 92] Ex. K at 4. Thus, the State did not abandon the prosecution, and Ms. Miles was required to give up something of value (i.e., one-year probation and 50 hours of community service) in exchange for an AR disposition.

Finally, Plaintiff relies on *Posr v. Court Officer Shield No. 207*, 180 F.3d 409 (2d Cir. 1999), and *DeLaurentis v. City of New Haven*, 220 Conn. 225 (1991), to support her argument that AR is a favorable termination. *See* Pl.'s Resp. [doc. # 92] at 38-42. However, neither case undermines *Roesch*. In *Posr*, the Second Circuit reasoned:

> When the termination is with prejudice, a different analysis prevails. *Murphy* explains that if the outcome "was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim." . . . But if the prosecution ended because of "a constitutional or other privilege . . . such as the right to a speedy trial," a malicious prosecution claim is not precluded. . . . "[T]he accused should not be required to relinquish such a privilege in order to vindicate his right to be free from malicious prosecution."

180 F.3d at 418 (quoting *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997)). The *Murphy* analysis, as described in *Posr*, actually supports Defendants' argument that an AR is not a favorable termination, as AR can be described as "an act of mercy requested or accepted by the accused."

*DeLaurentis* is only slightly more helpful to Ms. Miles. There, the defendant Mayor of New Haven sought to remove the plaintiff parking commissioner through a termination proceeding. *Id.* at 227. The plaintiff brought a claim for vexatious suit, and the Connecticut Supreme Court held that "we have never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding

12

has terminated without consideration." 220 Conn. at 251. The court went on to explain:

> Two concerns underlie the requirement of "successful termination." The first is the danger of inconsistent judgments if defendants use a vexatious suit or malicious prosecution action as a means of making a collateral attack on the judgment against them or as a counterattack to an ongoing proceeding. . . . The second is the unspoken distaste for rewarding a convicted felon or otherwise "guilty" party with damages in the event that the party who instituted the proceeding did not at that time have probable cause to do so. . . . Thus, an underlying conviction is recognized in this state as conclusive proof that there was probable cause for the charges unless it is proven that the conviction was obtained through fraud, duress or other unlawful means.

*Id.* at 251-52 (internal citations omitted). However, *DeLaurentis* is distinguishable from the current case in two critical way. First, it involves a vexatious suit claim and not a false arrest claim. Second, the plaintiff abandoned the proceeding on his own initiative and never reopened it. That is quite different from the case at hand, where Plaintiff requested AR and the State opposed it.

In sum, Ms. Miles' malicious prosecution and false arrest claims are subject to a favorable termination requirement, which she cannot satisfy. Because Defendants are entitled to summary judgment on the question of favorable termination, the Court need not decide whether there was probable cause for the arrest to resolve these claims. *See Frey*, 476 F. Supp. 2d at 150 (explaining that lack of probable cause is an element of a malicious prosecution claim, and the existence of probable cause is a complete defense to a false arrest claim). However, the Court notes that, as discussed in the section of this opinion dealing with Ms. Miles' claim for intentional infliction of emotional distress, there are enough disputed issues of material fact to preclude summary judgment on probable cause grounds.[4]

---

[4] The Court also questions whether Ms. Miles has a claim for false arrest or malicious prosecution against Officers Gogins, Russell, and Davis, as there is no indication that they were involved in Ms. Miles' arrest. Even if Ms. Miles were to show that they lied to Lieutenant Bernier during his investigation, it is questionable whether this alone would subject them to liability for false

## VI.

Defendants are also entitled to summary judgment on Ms. Miles' state law false light claim – Count Seven of the Amended Complaint [doc. # 25].

> In order to establish invasion of privacy by false light, the plaintiff must show "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*Jonap v. Silver*, 1 Conn. App. 550, 557-58 (1984) (quoting 3 Restatement (Second), Torts § 652E); *see also Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131 (1982). "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) *is not true*; . . . and (2) is such a 'major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" *Id.* at 131 (quoting 3 Restatement (Second), Torts § 652E cmt. c) (internal citation omitted and emphasis added).

In the instant case, Ms. Miles' false light claim rests primarily on a press release issued on the day of her arrest. *See* Pl.'s Resp. [doc. # 92] at 48-49; *see also id*. Ex. J (press release). The press release states that Ms. Miles was arrested after a two month investigation, and "charged with two counts of fabricating physical evidence and one count of tampering with a witness." *Id*. There is nothing false about this statement, and Ms. Miles makes no claim that the statement is false. Therefore, Ms. Miles has no claim of false light invasion of privacy. *See Goodrich*, 188 Conn. at 131-32 ("[W]e note that the plaintiff conceded during direct examination that the published

---

arrest or malicious prosecution. But the Court does not need to decide this issue to resolve the pending motion, and it declines to do so.

statements concerning his financial affairs were true, and this defeats his claim for a false light invasion of privacy.").

In a supplemental brief devoted to her false light claim, Ms. Miles relies on comment b of § 652E of the Restatement to argue that false light is distinguishable from defamation and does not require a falsehood. *See* Pl.'s Supp. Mem. in Opp. to Mot. for Summ. J. Regarding False Light [doc. # 101] ("Pl.'s Supp. Mem.") at 1-2. It is true that the Restatement suggests that a claim for false light invasion of privacy does not require defamation. *See* Restatement (Second) Torts § 652E cmt. b. But the Restatement is also clear that such a claim can be based only on the publication of material that is false. As the Comment states, "[I]t is essential to the rule stated in this Section that the matter published concerning the plaintiff is not true." *See id*. cmt. a. More importantly, the Connecticut courts have only recognized a false light claim where the defendant has published a falsehood. *See Goodrich*, 188 Conn. at 131-32; *Jonap*, 1 Conn. App. at 557-59.

Ms. Miles also argues that her false light claim is based not just on the press release, but also on communications between Defendants and her supervisors and co-workers during which Defendants described her conduct and "portrayed her as a liar." *See* Pl.'s Supp. Mem. [doc. # 101] at 2-3. But Ms. Miles offers no evidence to support this claim beyond vague assertions that the Hartford Police Department contacted DCF employees and told them that Ms. Miles' account of plastic bags being found at the apartment was untrue. She does not identify who made this statement or what was said. Furthermore, these allegations do not appear in Ms. Miles' Amended Complaint [doc. # 25], and her argument in support of her false light claim in her opening brief relies entirely on the press release, *see* Pl.'s Resp. [doc. # 92]. The Court will not allow Ms. Miles to further amend her complaint or her brief at this late stage. Therefore, she cannot show that "the actor had

15

knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [Ms. Miles] would be placed." *Goodrich*, 188 Conn. at 131 (internal quotation marks and citation omitted).

## VII.

Finally, the Court turns to Ms. Miles' claim of intentional infliction of emotional distress.

> In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury.

*Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (internal quotation marks and citations omitted).

Defendants claim that their conduct in this case does not rise to the level of "extreme and outrageous." *See* Defs.' Mem. [doc. # 81-2] at 44-45. "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (internal quotation marks and citation omitted). It requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id*.

The Court cannot conclude that Defendants behavior falls short of "extreme or outrageous" as a matter of law. If a jury credits Ms. Miles' account and believes that Defendants lied about the existence of the three plastic bags and then covered it up, leading to Ms. Miles' arrest, this would justify a finding of liability for intentional infliction of emotional distress. In those circumstances, a jury could well conclude that such conduct is outrageous and beyond the bounds of decency. Therefore, the Court denies summary judgment on this claim as to all individual Defendants. However, Ms. Miles has no claim for intentional infliction of emotional distress against the City of Hartford. The Connecticut Supreme Court has clearly held that a political subdivision of the state is immune to suit based on intentional infliction of emotional distress by an employee. *Pane v. City of Danbury*, 267 Conn. 669, 685-87 (2004) ("[T]he [t]own may not be liable under [§] 52-557n(a)(2)(A) for [its employee's] alleged intentional infliction of emotional distress.") (internal quotation marks and citation omitted); *see also* Conn. Gen. Stat. § 52-557n(a)(2) ("Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property cause by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct . . . .").[5] Therefore, the Court grants summary judgment on this claim to the City.

Defendants argue that there was probable cause for the arrest, and thus Ms. Miles' claim of intentional infliction of emotional distress cannot stand. *See* Defs.' Mem. [doc. #81-2] at 45.

---

[5] In *Grady v. Town of Somers*, 294 Conn. 324, 2009 WL 4842765 (Dec. 22, 2009), the Connecticut Supreme Court overruled *Pane* in part, but not in a way that is relevant to this case. *Grady* dealt with municipal immunity for an employee's discretionary acts under Connecticut General Statutes § 52-557n(a)(2)(B), *see Grady*, 2009 WL 4842765, at *1, whereas municipal immunity for claims of intentional infliction of emotional distress is based on § 52-557n(a)(2)(A), which deals with an employee's intentional criminal or tortious conduct, *see Pane*, 267 Conn. at 685-87.

Defendants may be correct that this claim would fail if there were probable cause. *See Washington v. Blackmore*, No. CV065000704, 2008 WL 5156436, at *7 (Conn. Super. Ct. Nov. 10, 2008) ("The court finds that the defendants are entitled to summary judgment on the plaintiff's claim of intentional infliction of emotional distress, since it has determined that the defendant officers had probable cause when arresting the plaintiff. Because it is found that the defendant officers had probable cause when arresting the plaintiff, the defendants' conduct in making the arrest lacks the severity or outrageousness that a viable claim for intentional infliction of emotional distress requires."). However, as mentioned previously, there are too many disputed issues of material fact to grant summary judgment on probable cause grounds.

"An arrest pursuant to a warrant signed by a neutral judge or magistrate normally carries a presumption that it was made with probable cause." *Garcia v. Gasparri*, 193 F. Supp. 2d 445, 450 (D. Conn. 2002). "[A] plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). A plaintiff can carry this burden if she can demonstrate that a defendant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotation marks and citations omitted). This determination is a mixed question of law and fact, and "implicates what, in [the Second Circuit], has come to be known as the 'corrected affidavits doctrine.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Under this doctrine, the Court must construct what a hypothetical, "corrected" warrant application would contain, based on the facts as they were known to the applicant, and must decide whether this corrected affidavit would support probable cause to arrest.

*See Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir. 1999). In so doing, the Court also must "put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." *Martinez v. City of Schenectady*, 115 F.3d 111, 115 (2d Cir. 1997) (quoting *Soares*, 8 F.3d at 920). If the corrected warrant application also objectively supported probable cause, "no constitutional violation of the plaintiff's Fourth Amendment rights has occurred." *Soares*, 8 F.3d at 920.

The problem for Defendants in this case is that the arrest warrant affidavit is dependent on Defendants' version of the events of May 27, 2005 and thereafter, which is largely controverted by Ms. Miles' version of those same events. Most critically, the versions differ as to the very existence of the three plastic bags. There are other important differences as well, such as whether Ms. Miles pressured the aunt into writing the letter supporting her version or whether the aunt did so of her own accord. These disputes make it impossible for the Court to decide the issue of probable cause without a jury determination regarding the underlying facts. *See Moreno v. City of New Haven Dep't of Police Serv.*, 604 F. Supp. 2d 364, 373 (D. Conn. 2009) ("Where parties dispute what facts were known to police officers at the time an individual was arrested, resolution is for the jury.").

## VIII.

In sum, for all of the reasons discussed above, Defendants' Motion for Summary Judgment [doc. # 81] is GRANTED in part and DENIED in part. The Court denies summary judgment on Ms. Miles' intentional infliction of emotional distress claim as to the individual Defendants, and grants summary judgment to the individual Defendants on all other claims. The Court also grants summary judgment to the City of Hartford on all claims. The Court will conduct a trial on Ms. Miles' intentional infliction of emotional distress claim if she so desires. However, the Court will provide

counsel with an opportunity to assess this decision and determine whether such a trial is necessary or desirable.  The Court will issue a separate order scheduling a telephonic conference to discuss next steps in this case.

IT IS SO ORDERED.

/s/        Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: January 12, 2010.**